GERTRUDE PARKER, Inc. v. THE SKILLIGOLEE et al.

Petition of ABRAMS et al.

Petition of Gertrude PARKER, Inc.

THE GERTRUDE PARKER.

Nos. 1249, 1305, 1310.

United States District Court
D. Massachusetts.

Oct. 18, 1948.

386

Bingham, Dana & Gould, Charles S. Bolster, and Seymour P. Edgerton, all of Boston, Mass., for petitioners.

George P. Ponte, of New Bedford, Mass., for intervening petitioner, Alfred Costa, doing business as Big Chief Market.

Thomas H. Walsh, of Boston, Mass., for respondent.

SWEENEY, Chief Judge.

There are before me a libel in admiralty and two petitions for exoneration from or limitation of liability filed by the respective owners of the fishing vessels Gertrude Parker and Skilligolee, which were in a collision on the night of June 5, 1946, at a point about twenty-five miles northeast by east of the Cape Cod light, at 10:30 in the evening. The Parker immediately filled with water and sank constituting a total loss, except for two dories valued at $50. The Skilligolee was damaged by the collision but was able to proceed to port.

Findings of Fact.

The Gertrude Parker left the fishing grounds at Georges Bank at about noon of June 5 and headed for Boston carrying between 85,000 and 90,000 pounds of fish. The Skilligolee had left Eastern Point off Gloucester at 4:30 the same afternoon bound for a fishing area in the vicinity of Georges Bank. The Parker traveled a west northwest course and the Skilligolee southeast by east, so that they were within one compass point, or about 11° of being on opposite courses. Neither ship encountered any thick weather until sometime later in the evening, the Skilligolee at about 9:30 P.M., and the Parker at about 10:00 P.M. Up to this time both vessels had been traveling at about eight to nine miles per hour. The Skilligolee reduced her speed to between five and six miles per hour when she entered the fog, and continued at that speed until a moment or two after the collision. The Gertrude Parker did not reduce her speed on entering the fog but continued at about eight to nine miles per hour until just prior to the collision. On board the Parker there were two men on duty in the pilot house after 10:00 P.M., one at the wheel and the other acting as lookout. There was no lookout posted forward of the pilot house on deck or in the bow of the vessel. The Master of the Parker went below about 10:00 P.M. for lunch and was below just prior to the collision.

On board the Skilligolee was one man at the wheel in the pilot house after 9:30 P.M., and a lookout was posted on the bow of the vessel. The Master of the Skilligolee, after reducing speed to about five or six miles per hour, went below and was there just prior to the collision.

Each vessel claimed to have been blowing proper signals constantly after 10:00 P.M. and until the time of the collision. Each vessel, on the other hand, denies hearing any fog signals from the other until just a moment prior to the collision. From all of the evidence I find that only the Skilligolee was sounding her fog whistle properly for

·any length of time prior to the collision. I further find that, if the Gertrude Parker had been sounding a fog signal properly, the forward lookout aboard the Skilligolee would undoubtedly have heard it sooner. I find that no one aboard the Gertrude Parker was in the most favorable position, which would be the bow of the boat, to hear the fog signal being sounded by the Skilligolee.

The first approach of the two vessels toward each other was realized when the lookout in the pilot house of the Parker heard the Skilligolee's whistle. The Parker then sounded a long blast several seconds in duration. Immediately the lights of the Skilligolee became visible and the Parker swung to port, giving a signal to reverse and go astern. The vessels nevertheless collided, the nose of the Skilligolee hitting the Parker's starboard side about ten feet aft of her stem. The Master of the Parker came on deck when the first whistle was heard, but by that time the vessels were about one hundred feet apart and the collision could not then be avoided.

Aboard the Skilligolee the approach of the Gertrude Parker was first noticed when the forward lookout heard the long blast several seconds in duration by the Parker, mentioned above. The lookout shouted, "Hard astarboard!" and the vessel turned in that direction just before the collision occurred.

I find that the Gertrude Parker was unseaworthy and negligent to the extent that she failed to proceed in the fog at a moderate speed, having careful regard to the existing circumstances and conditions. I find that the Skilligolee, on the other hand, properly reduced her speed. I find that the Gertrude Parker did not have an adequate lookout on her bow, as prudent navigation in the fog would seem to demand. I find that the Gertrude Parker was unseaworthy and negligent to the extent that she failed to blow her horn continuously or periodically while in the fog.

### Conclusions of Law.

From the foregoing I conclude and rule that the libel cannot be maintained and must be dismissed. On both petitions for exoneration from or limitation of li-ability, I must find in favor of the owners as there is no evidence that any of the negligence found could be imputed to the owners, nor was there any privity between the owners and the neglect and unseaworthiness as found.

Decrees in accordance with the above may be submitted.